# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00460-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00462-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00464-ADA** |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| **MICROSOFT CORPORATION,** | § | |
| *Defendant.* | § | |
| | § | |

# PLAINTIFF'S REPLY IN SUPPORT OF
# OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I. U.S. Patent No. 7,106,727 (Case No. 6:20-cv-00462) Disputed Claim Terms ............... 1

    1. determining a measure of the plurality of calls ........................................ 1

    2. set of resources ........................................................................................ 2

II. U.S. Patent No. 7,706,519 (Case No. 6:20-cv-00464) Disputed Claim Terms ............... 4

    3. automatically/automatic .......................................................................... 4

III. U.S. Patent No. 8,625,758 (Case No. 6:20-cv-00460) Disputed Claim Terms ............... 5

    4. accessing, dynamically, a rule for charging a sponsor of said communication services ............................................................................. 5

    5. a plurality of parameter values including at least one respective value of at least one respective parameter other than an identity of an originator of the request for communication services, an intended recipient of a communication of the requested commnication services and an identity of the sponsor .......... 6

    6. dynamically determining a rule for charging a sponsor of said communication service ............................................................................. 8

    7. a plurality of parameter values including at least one respective value of at least one respective parameter other than an identity of an originator of a request for the communication service, an intended recipient of a communication of the requested communication service and an identity of the sponsor ............................................................................................................ 8

    8. a first cost for the usage of said communication service is charged at least partially to said sponsor, by determining a second cost, the second cost depending on said rule and said first cost .................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Phillips* v. *AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ....................................................................................... 2, 3

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1369 (Fed. Cir. 2012) ....................................................................................... 1, 5

Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development ("WSOU") respectfully submits this reply claim construction brief in support of its proposed constructions.

## I. U.S. Patent No. 7,106,727 (Case No. 6:20-cv-00462) Disputed Claim Terms

### 1. determining a measure of the plurality of calls

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | measuring the number and type of calls on the network |

Defendant's Responsive brief seems to imply that if claim terms do not employ, in Defendant's opinion "everyday English phrasing" (Resp. Br. at 4) or if the term is "awkwardly phrased" (*Id.* at 3), then construction (or an even more awkward re-phrasing) of the term is necessary. *Id.* at 2-4. However, Defendant provides no authority for such a proposition. That is because "[a]bsent disclaimer or lexicography, the plain meaning of the claim controls." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1369 (Fed. Cir. 2012). As an example of how unhelpful Defendant's proposed construction is, Defendant contends that "[t]he patent leaves open-ended how the measuring is performed … as does Microsoft's proposed construction." Resp. Br. at 4. However, if that was the case regarding Defendant's proposed construction, (if it was truly "open-ended" like the specification provides), then truly no construction is necessary. Defendant only argues that "WSOU does not contend that measuring would make any sense if the <u>number</u> of calls was not measured." *Id.* (emphasis added). However, not only did WSOU's opening brief make that argument, so does the specification itself:

"The measure of calls *includes* a measure of circuit-switched traffic (in bits per second), a measure of packet-switched traffic (in bits per second), a distribution of traffic between circuit-switched and packet-switched (e.g., by %), a measure of circuit-switched calls (e.g., a count of current circuit switched calls), a measure of packet-switched calls (e.g., a count of current packet-

switched calls), a distribution of calls between circuit-switched and packet-switched (e.g., by % of total bandwidth), *and any of measure of traffic or calls as known in the art.*" '727 patent, 4:34-44 (emphasis added).

More problematic however, is that Defendant does not even attempt to explain how the "number and type of calls" could correspond, for example, to measuring "bits per second," a percentage of distribution of traffic between circuit-switched and packet-switched calls by number or by bandwidth, much less how Defendant's proposed limitation would encompass "*any of measure of traffic or calls as known in the art.*" *See* '727 patent, 4:31-52 (emphasis added). Defendant's proposed construction improperly seeks to limit the term to just one of the recited examples of a measure, whereas the specification not only enumerates many other measures, but the specification also makes clear the claims are not limited to just those specific examples. Defendant's proposed construction should be rejected.

### 2. set of resources

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | a part of a pool of physical network resources, each capable of handling circuit-switched and packet-switched formats |

In its Responsive Brief, Defendant seems to suggest that on the one hand, this term is widely used and understood in "everyday vernacular," but because this term appears in a patent claim, it simultaneously has no meaning. *See* Resp. Br. 4-5. Defendant seems to suggest that unless claims themselves recite a glossary of all words used in the claim, all claim terms must be construed. However, Defendant does not allege that a person of ordinary skill in the art would not understand the claim term. However, "[t]here is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time." *Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). And the plain and ordinary meaning of a term is the

"meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.*

Defendant is wrong that the specification only describes "physical resources" (Resp. Br. at 6), and to the extent Defendant is insinuating prosecution history estoppel or a disavowal, Defendant cites to nothing for support. *Id.* Instead, Defendant's proposed construction improperly seeks to import limitations from the specification, especially where the specification expressly states that "The above embodiments describe an allocation of resources between circuit-switched and packet-switched. The present invention may also be applied to additional types of resources, i.e., to allocate and reallocate resources between two or more types of resources." '727 patent, 7:62-67. The specification enumerates "bandwidth" as an example. *Id.*, 1:34. Regardless, as the specification expressly points out, the preferred embodiments are not limiting and should not be imported into the claims as limitations.

Next, Defendant does not deny that it is importing limitations from the specification regarding its proposal to limit the claim language to "each [are] capable of handling circuit-switched and packet-switched formats." Defendant argues that the "resources" come from "the same, undifferentiated pool or 'plurality of resources.'" Resp. Br. 6. Even if that were true, "undifferentiated" does not mean monolithic. Indeed, the claim language recites "allocating to the at least one circuit-switched call *a first set* of resources…" and "allocating to the at least one packet-switched call *a second set* of resources…" '727 patent, 8:29-34. The claims only require that the plurality of resources contain at least circuit-switched and packet-switched resources, not that **each** resource is "capable of handling circuit-switched and packet-switched formats." Indeed, the specification recites that in an exemplary embodiment, "network switches 103 allocate and reallocate the resources linking the switches 103 between circuit-switched resources and packet-

switched resources." *Id.* 3:9-11. Defendant's proposed construction should be rejected.

## II. U.S. Patent No. 7,706,519 (Case No. 6:20-cv-00464) Disputed Claim Terms

### 3. automatically/automatic

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Defendant's own Responsive Brief illustrates that this term sufficiently informs those skilled in the art about the scope of the invention with reasonable certainty. Specifically, Defendant shows its own understanding that "automatic" to mean "occur without the user being involved." *See* Resp. Br. at 10. Nor does anything in Defendant's Responsive Brief show why a person of ordinary skill in the art (or anyone at all for that matter), would not be able to understand the scope of the invention with reasonable certainty, especially given the common understanding of the word. Instead, Defendant makes various proposals via attorney argument and for which no authority is provided. For example, Defendant argues that because the term was added before allowance, "whatever meaning is attached now to 'automatically,' that meaning must distinguish the asserted claims from the prior art over which the examiner was rejecting the claims at the PTO." *Id.* at 9. However, Defendant provides no authority for such a proposition, and the prosecution history itself shows that is not the case. The patentee expressly argued that the prior art was overcome by a variety of reasons even without the addition of the term. *See* Resp. Br. Ex. 4 at 8-14. The patentee also describes adding the term to the claim as "purely in the interest of expediting the prosecution of the instant invention." *Id.* at 15.

Moreover, the specification describes exemplary embodiments of the claim language at issue. For example, at the '519 patent, 2:39-45 (gateways connect telephonic networks to packet data networks); *Id.*, 6:7-21 (describing indexer operation and teaching that the indexer detects updated addresses and alters the contents of the index appropriately); *Id.*, 4:32-49 (indexer indexes

together at least the first virtual-calling station identity of the service-user calling station with a packet-based network identity of the service-user calling station, and the packet-based-network identity is associated with logical connection of the service-user calling station to the packet data network); *Id.*, 6:63-7:10 (describing a call routing process where a gateway sends an inquiry to a proxy server to access an index).

Regardless, Defendant has itself demonstrated an understanding of the term, both in everyday English and in the context of the claims. Finally, Defendant's allegation that the term is somehow indefinite because a dictionary provides more than one definition for a term is also a proposal without any authority. Under Defendant's logic, every patent must include a glossary of every word and phrase used in the claims.

### III. U.S. Patent No. 8,625,758 (Case No. 6:20-cv-00460) Disputed Claim Terms

#### 4. accessing, dynamically, a rule for charging a sponsor of said communication services

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | selecting in real-time which rule from a set of rules is applicable for charging a sponsor of said communication service |

Defendant fails to address that (i) there is nothing in the specification that requires the accessing to occur in "real-time," and (ii) there is nothing in the specification that requires "a set of rules" as Defendant proposes. Instead, Defendant attempts to shift the argument to first assuming that the claim must be construed (it does not), and then arguing that WSOU fails to explain the meaning of "dynamically" and "accessing." *See* Resp. Br. at 15-16. That is not the standard, instead, "[a]bsent disclaimer or lexicography, the plain meaning of the claim controls." *Toshiba.*, 681 F.3d at 1369. First, while Defendant cites to various passages in the specification where the word "dynamically" appears, Defendant fails to support its improper construction that

5

attempts to replace the word "dynamically" with "real-time." The word "real-time" does not appear anywhere in the specification, and Defendant provides no explanation for why the term "dynamically" should be replaced with "real-time." At best, Defendant is suggesting the words are synonyms, but if that is the case, then there is no reason to change the plain language of the claims. Second, even Defendant's own citations do not support the requirement that the rule for charging a sponsor has to be pre-determined "from a set of rules." Instead, in an exemplary embodiment, the specification teaches that the rule is "<u>determined</u> dynamically." '758 patent, 6:14. At best, Defendant's citations to the specification merely recite exemplary embodiments, and there is nothing in Defendant's Responsive Brief that argues or supports either disclaimer or lexicography. Instead, for example, the specification expressly contemplates the situation where no such pre-existing rule exists, such that in the event that the sponsorship database does not include an appropriate sponsorship rule, then the rule is <u>*set*</u>, for example, to zero. *Id.*, 6:20-22. Another exemplary embodiment teaches that a sponsor may be charged some balance B that is left on a prepaid account. *Id.*, 9:24-27. It teaches that balance B is stored and maintained separately from the sponsorship database. *Id.*, 9:38-41. In summary, Defendant's proposed construction improperly rewrites the words of the claim language and seeks to limit the scope of the claim language where there is no evidence of disclaimer or lexicography. Defendant's proposed construction should be rejected.

> 5. **a plurality of parameter values including at least one respective value of at least one respective parameter other than an identity of an originator of the request for communication services, an intended recipient of a communication of the requested communication services and an identity of the sponsor**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | a plurality of parameter values, one of which must be something other than the location/ country code of the phone number of an |

6

| | originator of the request for communication services, the location/ country code of the phone number of the intended recipient of a communication of the requested communication services, or the identity of the sponsor |
|---|---|

Defendant's proposed construction confusingly and unnecessarily rewrites the words of the claim language and improperly seeks to limit the scope of the word "identity" where there is no evidence of disclaimer or lexicography and, strangely, in only one of two instances in the claim language. Additionally, Defendant admits its proposed construction was further confused by an "obvious typo." and Defendant attempts to chide WSOU for not calling Defendant to confirm Defendant's error. Resp. Br. 11, n.3. Essentially, Defendant faults WSOU for not being mind-readers. Regardless, as Defendant's own response shows, Defendant is confused by its own proposed construction, and if WSOU is reading Defendant's brief correctly, Defendant's proposed construction is also unnecessary. Specifically, Defendant states that Defendant "does not seek to narrow this claim to restrict the 'identity' of an originator of the request and an intended recipient of a communication to 'the location / country code of the phone number of 'each respective entity.'" *Id.* at 12. But if that is true, then Defendant's proposed construction to do exactly that (replace the word "identity" to "the location/country code of the phone number…") is improper on its face. Moreover, Defendant's Responsive Briefing further shows that its proposed construction is improper by failing to acknowledge that its proposal recites "**the location/ country code** *of the phone number*…," whereas Defendant's Responsive Brief alleges that it is arguing about "the local, national, or international ***phone number*** thereof." *Id.* at 12. Instead, Defendant makes a non-sequitur in stating "location codes" are known to indicate whether a phone number is "local, national, or international." *Id.* at 13. This fails to address how the "location code" alone determines an "identity" much less how it is the only such determination. This is further evidence

7

that even Defendant is confused by its own proposed construction.

Furthermore, Defendant fails to address why its proposed construction replaces the word "identity" in only one of the two places the word appears in the claim language. Nor does Defendant address how its re-phrasing using the word "code" is helpful when the word "code" does not appear anywhere in the specification. Regardless, nothing in any of the examples from the specification rises to the level of disclaimer or lexicography, and nothing cited by Defendant in the prosecution history rises to the level of prosecution history estoppel, nor does Defendant make any such arguments.

> **6.     dynamically determining a rule for charging a sponsor of said communication service**

This term should be given its plain and ordinary meaning for the same reasons as discussed in **Section III.4**, above.

> **7.     a plurality of parameter values including at least one respective value of at least one respective parameter other than an identity of an originator of a request for the communication service, an intended recipient of a communication of the requested communication service and an identity of the sponsor**

This term should be given its plain and ordinary meaning for the same reasons as discussed in **Section III.5**, above. Defendant's proposed construction should be rejected.

> **8.     a first cost for the usage of said communication service is charged at least partially to said sponsor, by determining a second cost, the second cost depending on said rule and said first cost**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite |

Defendant insists that the "first charge" must be charged to the sponsor, but Defendant is wrong. The claim language itself states plainly: "**a first cost** for the usage of said communication service <u>is charged **at least partially**</u> to said sponsor" and that value of the partial amount of the

first cost is made by a determination of a second cost.

Once again, breaking up the term into three pieces may assist Defendant: (i) a first cost for said communication service is charged at least partially to the sponsor, (ii) by determining a second cost, (iii) the second cost depending on said rule and said first cost. To put the above claim language differently, a second charge is charged to the sponsor, where the second charge is determined by the first cost and a said rule, which results in the second cost (which is what is charged to the sponsor) being at least a partial amount of the first cost.

Defendant overlooks that only a part of the first cost is charged to said sponsor. In other words, it is the second cost that is charged to the sponsor, not the first cost, and there is nothing controversial about the second cost being determined based on a rule and the first cost. The specification provides an example: "In step 306 said sponsor's cost C**2** is determined, for example by applying said rule R to said total cost C**1**. For example said rule R is defined as pair of data, containing said first values referencing said sponsor, and said second value r, e.g. r=0.1, defining e.g. said *percentage* of said **total cost C1** that is to be charged to said sponsor. In this case said **second cost C2** is calculated as follows: C2=C1 *r." '758 patent, 6:35-41 (emphasis added).

As shown in the above example, the sponsor's cost (C2, or the second cost) is determined "by applying said rule to said total cost C1 [the first cost]." Put differently C2 (the second cost) equals C1 (the first cost) multiplied by "r" (the percentage value from said rule), which results in the sponsor's cost (the second cost C2) being at least a portion of (or partially of) C1, the first cost.

Defendant's position that the term is indefinite should be rejected. In fact, the claim language is plain on its face, but regardless, Defendant does not even attempt to dispute or address the above teaching by the specification, nor does Defendant even attempt to show why the above teaching does not apply to the claim language. Defendant can only state in conclusory fashion that

9

"[t]he language *simply cannot* be untangled sufficiently that the metes and bounds of this claim can be understood with *any conceivable* clarity." Resp. Br. at 18-19 (emphasis added). Despite Defendant's categorical and insistent language, Defendant fails to support its bare and conclusory attorney argument.

Dated: February 11, 2021              Respectfully submitted,

By:   */s/ Brian M. Koide*
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeffrey Huang
Brian M. Koide
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com
Brian@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on February 11, 2021.

*/s/ Brian M. Koide*
Brian M. Koide