**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC, d/b/a BRAZOS LICENSING AND DEVELOPMENT<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Civil Action No. 6:20-cv-00460<br>Civil Action No. 6:20-cv-00462<br>Civil Action No. 6:20-cv-00464 |

**DEFENDANT'S SUR-REPLY MARKMAN BRIEF**

## **TABLE OF CONTENTS**

I.   WSOU MISSTATES CLAIM CONSTRUCTION PRINCIPLES ....................................... 1
II.  THE '727 CLAIM TERMS ................................................................................................ 1
  A.  "determine / determining …"  (Claims 1 and 11) ................................................... 1
  B.  "set of resources" (Claims 1, 6, 7, 11, and 16) ...................................................... 3
III. THE '519 CLAIM TERMS ................................................................................................ 4
  A.  "automatically" / "automatic" (Claims 1 and 12) ................................................... 4
IV.  THE '758 CLAIM TERMS ................................................................................................ 6
  A.  "accessing, dynamically, …" (Claim 1) and "dynamically determining a rule for charging a sponsor of said communication service" (Claims 8 and 10) ................................................................................................. 6
  B.  "a plurality of parameter values … for communication services …" (Claims 1 and 8) and "a plurality of parameter values … for the communication service …" (Claims 18 and 19) ................................................ 7
  C.  "a first cost …" (Claim 2) ....................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*,
   811 F. 3d 1334 (Fed. Cir. 2016)..................................................................................................5

*Infinity Computer Prods. v. Oki Data Ams., Inc.*,
   No. 2020-1189, 2021 WL 476067 (Fed. Cir. Feb. 10, 2021) ........................................................4, 5

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)...........................................................................................1, 2, 3, 8

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1369 (Fed. Cir. 2012).....................................................................................................2

*Trs. of Columbia Univ. in City of New York v. Symantec Corp.*,
   811 F.3d 1359 (Fed. Cir. 2016)...............................................................................................1, 3, 8

*UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*,
   816 F.3d 816 (Fed. Cir. 2016).......................................................................................................3

Microsoft submits this sur-reply in support of its proposed claim constructions addressing terms of U.S. Patent No. 7,106,727 ("the '727 patent") and U.S. Patent Nos. 7,706,519 (the '519 patent") and 8,625,758 ("the '758 patent"). WSOU contends only that "plain and ordinary" meaning applies as to each term, but that is inaccurate and insufficient, as Microsoft explains further below.[1]

## I. WSOU MISSTATES CLAIM CONSTRUCTION PRINCIPLES

Explicit redefinition or disavowal is not required for claim construction. *See Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016). A claim term must be understood "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Claims do not stand alone, but are part of a fully integrated written instrument. *Id*. at 1315. Hence, "the specification is always highly relevant" and "is often the best guide to the meaning of a disputed term." *Trs. of Columbia Univ.*, 811 F.3d at 1365. "Even when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents." *Id.* at 1364 (citing *Phillips*, 415 F.3d at 1320-21).

## II. THE '727 CLAIM TERMS

### A. "determine / determining …"  (Claims 1 and 11)

| Claim Language | Microsoft's Proposed Construction |
|---|---|
| determine/determining a measure of the plurality of calls | measuring the number and type of calls on the network |

---

[1] Emphases are added throughout, unless otherwise indicated.

1

The parties agree on the fundamental concept behind Microsoft's proposed construction: that "determining a measure of the plurality of calls" means measuring certain aspects of the calls currently on a network (so that the network resources can be allocated or reallocated as necessary). This is consistent with the solution to the problem identified by the '727 patent.

The remaining dispute is whether "the number and type of calls" accurately captures the aspects of the network traffic being measured. It does. The portion of the specification at 4:31-52 that WSOU points to, and to which Microsoft cited at page 4 of its responsive brief, is entirely consistent. Fundamental to the proposed solution of the patent and this specification excerpt is knowing the type of calls on the network: circuit-switched or packet-switched. As to the number of calls, the bits per second, percentage of distribution of circuit-switched versus packet-switched traffic, count of circuit-switched versus packet-switched calls, and percentage distribution by bandwidth of circuit-switched versus packet-switched calls are all examples of different ways to capture information about the number of calls on the network. "Any measure of traffic or calls as known in the art" accounts for the possibility of other specific measurements that could be taken to identify how much of each type of call is on the network at that time. Microsoft's proposed construction is non-limiting, leaving open-ended how the measurement is performed or what measurement is specifically used to identify the amount of traffic currently on the network, while accurately describing what is being measured (*i.e.*, the number and type of calls).

*Toshiba Corp. v. Imation Corp.*, 681 F.3d 1369 (Fed. Cir. 2012) does not dictate otherwise. As described above in Section I, claim construction requires terms to be understood "in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. All the evidence in the patent specification regarding the meaning of the term "determining a measure of the plurality of calls" supports that certain aspects of the calls currently on a network

must be measured, and the aspects of those calls that must be measured are described as falling within only two categories (*e.g.*, the number and type of calls). Microsoft's proposed construction should be adopted. *Trs. of Columbia*, 811 F.3d at 1364.

      B.      **"set of resources" (Claims 1, 6, 7, 11, and 16)**

| Claim Language | Microsoft's Proposed Construction |
|---|---|
| set of resources | a part of a pool of physical network resources, each capable of handling circuit-switched and packet-switched formats |

As WSOU acknowledges, the asserted claims require allocating a first and second set of resources from a plurality (*i.e.*, a pool) of resources. WSOU Reply Brief ("Reply Br.") at 3. Contrary to its assertion that each resource need not be capable of handling either circuit-switched or packet-switched calls, the portion of the specification that WSOU cites in the very next sentence confirms Microsoft's proposed construction. The only way that "network switches 103 allocate *and reallocate the resources linking the switches* 103 between circuit-switched resources and packet-switched resources" is if the resources in the available pool are capable of handling both types of calls. This is in line with the specification's explicit statement that "each physical resource is capable of handling circuit-switched and packet-switched formats." '727 patent at 3:26-30. Nowhere is there any disclosure that the network resources might not be capable of handling both formats. *See Phillips*, 415 F.3d at 1316 ("In light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims."); *see also*, *UltimatePointer, L.L.C. v. Nintendo Co.*, *Ltd.,* 816 F.3d 816, 824 (Fed. Cir. 2016) (citing *Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*, 527 F.3d 1300, 1308 (Fed. Cir. 2008)) (interpreting a claim consistent with the disclosure of the specification, even when a broad

interpretation that is not supported by the specification would be plausible if the term were "[d]ivorced from the specification").

The claimed network resources are only ever referred to as "physical" resources, both in the specification and during prosecution. Indeed, the applicant explained to the patent examiner that the claimed "resources" referred to "the infrastructure used to provide services" as a general matter, not limiting the explanation to an embodiment. Microsoft Responsive Brief ("Resp. Br.") Ex. 2 at 3.

### III. THE '519 CLAIM TERMS

#### A. "automatically" / "automatic" (Claims 1 and 12)

| Claim Language | Microsoft's Proposed Construction |
| --- | --- |
| "automatically" / "automatic" | Indefinite |

Although WSOU still resists offering a construction for any of these phrases, its reply implies that it believes that the claims use "automatic" to mean "occur without the user being involved." Reply Br. at 4. Microsoft agrees that, on its own, "automatic" *can* mean "without the user being involved. But this limited common ground does not render the claims definite.

WSOU makes no attempt to address the terms as they are actually used: not in isolation, but in the context of claim elements (*i.*e., automatically connected to a packet-based network, automatically indexing together…, automatically associated with…, and automatically accessed pursuant to call routing of a call…). *See Infinity Computer Prods. v. Oki Data Ams., Inc.*, No. 2020-1189, 2021 WL 476067, at *8 (Fed. Cir. Feb. 10, 2021) ("Yet the indefiniteness here does not reside in the term 'passive link' or 'computer' on its own but rather in the relationship between the two in the context of these claims). None of the "exemplary embodiments" cited by

4

WSOU (Reply Br. at 4-5) uses the terms "automatic" or "automatically," and WSOU does not attempt to explain how the passages give definite meaning to the claims.

WSOU also wholly declines to explain what role the "automatically" and "automatic" amendment played in obtaining allowance over the prior art (*e.g.*, U.S. Pat. 5,889,845 to Staples, U.S. Pat. Pub. No. 2003/0165145 to Cho) and the double-patenting rejection (over U.S. Pat. 7,460,658). Instead, its reply injects more uncertainty by suggesting that these terms were added to the claims, not necessarily to overcome the Examiner's rejections, but for some other, unarticulated reason "purely in the interest of expediting the prosecution of the instant invention." Reply Br. at 4 (citing Ex. 4 at 15). This is prosecution boilerplate and obfuscates the linkage between amended claims and associated arguments. If WSOU's representation is to be credited (which it should not), it would contradict the basic presumption that a recited claim term is presumed to have some meaning. *See Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F. 3d 1334, 1340 (Fed. Cir. 2016) (citing *Merck & Co. v. Teva Pharm. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005)) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so").

At bottom, WSOU seeks to preserve the uncertain meaning of a legal instrument, the '519 patent, that is legally defined by its public notice function. *See Infinity Computer Prods.*, No. 2020-1189, 2021 WL 476067, at *7-8 (holding a claim to be indefinite based on contradictory statements made during prosecution and later reexamination). WSOU's new reliance on prosecution boilerplate renders the actual metes and bounds of the "automatically" and "automatic" terms hopelessly vague and the claims, which were specifically amended to include these terms, indefinite.

5

## IV. THE '758 CLAIM TERMS

### A. "accessing, dynamically, …" (Claim 1) and "dynamically determining a rule for charging a sponsor of said communication service" (Claims 8 and 10)

| Claim Language | Microsoft's Proposed Construction |
|---|---|
| accessing, dynamically, a rule for charging a sponsor of said communication services | selecting in real-time which rule from a set of rules is applicable for charging a sponsor of said communication service |
| dynamically determining a rule for charging a sponsor of said communication service | selecting in real-time which rule from a set of rules is applicable for charging a sponsor of said communication service |

Microsoft has thoroughly explained the patent's disclosures that require real-time access of the applicable charging rule. Resp. Br. at 15-17. Indeed, that goes to the entire purpose of the patent. *See* '758 at 1:44-54 (describing the "main idea of the invention" as a service in which a rule for charging a sponsor is "determined dynamically" allowing sponsorship to be "very flexible in terms of amount of sponsorship and sponsored party" and to make available the service to users "directly e.g. without any delay"); EX. 8 at 7-8 ("the present application is directed toward a flexible, dynamic method that facilitates a sponsor totally, or partially, sponsoring communication services of a communications service user" including "a mechanism for a portion of communication service charges, to be paid for by a sponsor, to be determined through the use of a multi-dimensional rule and without delaying the provision of the communication service").

Microsoft also explained previously that there must be a set of rules from which the applicable rule is selected. Resp. Br. at 16-17. A rule must exist before it can be accessed or found. However, Microsoft's proposed construction does not limit how a rule comes into existence. WSOU's second argument in this portion of its reply brief simply manufactures a dispute that does not exist.

6

B.       "a plurality of parameter values … for communication services …" (Claims 1 and 8) and "a plurality of parameter values … for the communication service …" (Claims 18 and 19)

| Claim Language | Microsoft's Proposed Construction |
| --- | --- |
| a plurality of parameter values including at least one respective value of at least one respective parameter other than an identity of an originator of the request for communication services, an intended recipient of a communication of the requested communication services and an identity of the sponsor | a plurality of parameter values, one of which must be something other than the location/country code of the phone number of an originator of the request for communication services, the location/ country code of the phone number of the intended recipient of a communication of the requested communication services, or the identity of the sponsor |
| a plurality of parameter values including at least one respective value of at least one respective parameter other than an identity of an originator of a request for the communication service, an intended recipient of a communication of the requested communication service and an identity of the sponsor | a plurality of parameter values, one of which must be something other than the location/country code of the phone number of an originator of the request for communication services, the location/ country code of the phone number of the intended recipient of a communication of the requested communication services, or the identity of the sponsor |

Microsoft's proposed construction for these terms is actually quite straightforward, notwithstanding WSOU's attempts at obfuscation. The claim term as written is a negative limitation: the "plurality of parameter values" must include a parameter that is *something other than* (1) the location/country code of the caller's phone number, (2) the location/country code of the recipient's phone number, and (3) the sponsor's identity. Any other parameter is fair game, both under the patent specification and under Microsoft's proposed construction.

WSOU takes issue with terminology used in Microsoft's responsive brief discussing "local, national, or international phone number," claiming that is inconsistent with Microsoft's proposed construction that specifies "location/country code of the phone number." Reply Br. at 7. But it should be undisputed that a phone number includes an area code and/or country code. No inconsistency exists.

7

As to WSOU's query regarding the particulars of Microsoft's proposal, the patent specification and the prosecution history unequivocally describe that phone number information – which includes location information provided by country and/or area codes – identifies both a call originator and a call recipient. Resp. Br. at 13-14; *see also*, WSOU Opening Brief ("Op. Br.") at 7 ("exemplary identifiers are phone numbers"). WSOU has no response, except to fall back to its misguided arguments regarding disclaimer and lexicography that ignore the long held principle of claim construction requiring terms to be understood "in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. Explicit disclaimer or redefinition is not required. *Trs. of Columbia*, 811 F.3d at 1364. Because the only disclosure in the patent specification and prosecution history regarding the scope of "an identity of an originator of the request for communication services" or "an intended recipient of a communication" discloses that such parameters include "local, national, or international phone number," Microsoft's proposed construction is proper and should be adopted. *Id*.

C.      "a first cost …" (Claim 2)

| Claim Language | Microsoft's Proposed Construction |
|---|---|
| a first cost for the usage of said communication service is charged at least partially to said sponsor, by determining a second cost, the second cost depending on said rule and said first cost | Indefinite |

WSOU's reply proves Microsoft's point that claim 2 is indefinite. Under WSOU's interpretation of the language of this claim term, "it is the second cost that is charged to the sponsor, not the first cost," and it points to an example in the specification in support of this position. Reply Br. at 9.[2] Microsoft does not dispute that the cited portions of the specification

---

[2] WSOU's argument that the first cost is not charged to the sponsor results in reading out from the claim the situation where a first cost is charged in its entirety to the sponsor—"at least partially" clearly contemplates that the entire first cost may be charged.

describe calculating a second cost that depends on the rule and the first cost, and then charging the sponsor the second cost.

But that is not what the claim language recites. According to the plain language of the claim, "*a first cost* for the usage of said communication service *is charged at least partially to said sponsor*." It requires that the first cost be charged to the sponsor by determining a second cost. But that second cost depends on the first cost, in part. As written, the claim leaves the reader with a chicken-and-the-egg dilemma—what is the first cost, if it depends on the second cost, which depends on the first cost? The specification and prosecution history are of no help.

The claim language never says that the second cost is charged to the sponsor, as WSOU contends in an attempt to save the claim, and WSOU does not explain why the example it plucks from the specification should be sufficient to fundamentally change the meaning of words of the claim language as written.

DATED: February 24, 2021         By:   /s/ *Irene Yang*
                                       Barry K. Shelton
                                       Texas State Bar No. 24055029
                                       SHELTON COBURN LLP
                                       311 RR 620 S, Suite 205
                                       Austin, TX 78734
                                       Telephone: (512) 263-2165
                                       Fax: (512) 263-2166
                                       bshelton@sheltoncoburn.com

                                       *Of Counsel*

                                       Michael J. Bettinger
                                       Irene Yang
                                       SIDLEY AUSTIN LLP
                                       555 California St., Suite 2000
                                       San Francisco, CA 94104
                                       Telephone: (415) 772-1200
                                       Fax: (415) 772-7400
                                       mbettinger@sidley.com
                                       irene.yang@sidley.com

                                       Richard A. Cederoth
                                       John W. McBride
                                       SIDLEY AUSTIN LLP
                                       1 South Dearborn St.
                                       Chicago, IL 60603
                                       Telephone: (312) 853-7000
                                       Fax: (312) 853-7036
                                       rcederoth@sidley.com
                                       jwmcbride@sidley.com

                                       *Attorneys for Defendant Microsoft Corporation*

## CERTIFICATE OF SERVICE

I certify that on February 24, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record as identified below.

*/s/ Irene Yang*
Irene Yang
